Doe v. Fed. Deposit Ins. Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of September, two thousand thirteen.

Present:
> ROBERT A.  KATZMANN,
> > *Chief Judge,*
>
> DENNIS JACOBS,
> ROSEMARY S. POOLER,
> > *Circuit Judges.*

---

JANE DOE,

*Plaintiff-Appellant*,

v.                                                          No. 12-1947

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Defendant-Appellee.*

---

FOR PLAINTIFF-APPELLANT**:**          Jane Doe, *pro se*, Parlin, NJ.

FOR DEFENDANT-APPELLEE**:**          Kathryn Norcross, Acting Assistant General Counsel,
Lawrence H. Richmond, Senior Counsel,
Jaclyn C. Taner, Counsel, Federal Deposit
Insurance Corporation, Arlington, VA.

Appeal from the United States District Court for the Southern District of New York (Jones, *J.*).

**UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Jane Doe, proceeding *pro se*, appeals from a judgment entered February 28, 2012 dismissing her complaint for lack of subject matter jurisdiction. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Doe argues that the district court erred by determining that the Civil Service Reform Act ("CSRA") applied to her claims. The CSRA forced Doe to seek relief through one of the methods specified under 5 U.S.C. § 7121(g), and barred her from pursuing her claims in federal court.

The Federal Deposit Insurance Act ("FDIA") provides that "[n]o Federal banking agency . . . may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided information to any such agency or bank . . . regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, [or] an abuse of authority." 12 U.S.C. § 1831j(a)(2). The FDIA further provides that an employee who believes a violation of the FDIA has occurred may file an action in a federal district court. 12 U.S.C. § 1381j(b).

2

The CSRA, on the other hand, sets forth a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It provides that any "employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take . . . a personnel action with respect to any employee . . . because of . . . any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences . . . any violation of any law, rule or regulation." 5 U.S.C. § 2302(b)(8). If such a personnel action it taken, it is considered a "prohibited personnel practice." 5 U.S.C. § 2302(a). Under 5 U.S.C. § 2302, "personnel action" is defined as including, *inter alia*, "a performance evaluation," "a decision . . . concerning education or training if the education or training may reasonably be expected to lead to an appointment [or] promotion," reassignment, or "any . . . significant change in duties, responsibilities, or working conditions." The CSRA further provides that "[a]n aggrieved employee affected by a prohibited personnel practice . . . may elect not more than one of the [following] remedies . . . (A) An appeal to the Merits Systems Protection Board . . . . (B) A negotiated grievance procedure under this section. . . . [or] (C) Procedures for seeking corrective action under" 5 U.S.C. §§ 1211 *et seq.*, which governs proceedings before the Office of Special Counsel. 5 U.S.C. § 7121(g). We have held that "the [Civil Service] Reform Act . . . provides the exclusive remedy by which [federal] employees may challenge such actions and, unless the Reform Act either explicitly or by necessary implication sanctions judicial challenges to such actions, judicial challenge is foreclosed." *Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998).

Doe's complaint is founded on her claim that she reported violations of law by several banks and was retaliated against by her employer, the Federal Deposit Insurance Corporation ("FDIC") as evidenced by: (1) the creation of negative performance evaluations; (2) her being taken off certain projects and her work product being "altered" to include additional information; and (3) restrictions being placed on her employment including the denial of training and advancement opportunities. Since the CSRA defines "prohibited personnel practices" as including, *inter alia*, negative performance evaluations, reassignment and a change of duties, and a decision about training or further education, Doe's claims constitute "prohibited personnel practices" within the meaning of the CSRA. As Doe's claims do not fall within any of the exceptions to the CSRA's applicability, *see* 5 U.S.C. §§ 7121(d), (e), the CSRA governs Doe's claims and Doe must seek relief through one of the methods specified under 5 U.S.C. § 7121(g).

With respect to Doe's claim that her rights under the Privacy Act were violated because she received negative performance evaluations and responses to grievances that included information with which she did not agree, these actions also fall within the definition of "prohibited personnel actions." 5 U.S.C. §§ 2302(a)(2)(A), 2302(b)(8). When Privacy Act claims fall within the meaning of "prohibited personnel practices" under the CSRA, the CSRA precludes federal courts from considering such claims. *See*, *e.g.*, *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1130 (9th Cir. 2002), *abrogated on other grounds by Milbrook v. United States*, 133 S. Ct. 1441 (2013); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992); *Henderson v. Soc. Sec. Admin.*, 908 F.2d 559, 560-61 (10th Cir. 1990). Because Doe's Privacy Act claims fall within the definition of a "prohibited personnel action," the CSRA dictates that Doe may not pursue her claims in federal court.

4

Finally, Doe challenges the district court's protective and sealing orders, which the district court entered after Doe's counsel filed motions requesting those orders. "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (alteration in original) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)). Consequently, since Doe's retained attorney specifically requested that the district court enter protective and sealing orders, these requests are imputed to Doe and this Court rejects her challenges to the entry of these orders.

We have considered all of the petitioner's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5